Opinion issued June 17, 2010


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00103-CV
__________
 
TEXAS DEPARTMENT OF HUMAN SERVICES, Appellant
 
V.
 
OLIVER OKOLI, Appellee
 
 
 

 
 
On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2001-31783
 

 
 
O P I N I O N
          In this interlocutory appeal,


 appellant, the Texas Department of Human
Services (“TDHS”), challenges the trial court’s order denying its plea to jurisdiction
filed in the underlying Texas Whistleblower Act


 lawsuit brought against it by
appellee, Oliver E. Okoli. In three issues, TDHS contends that Okoli did not, as
required by the Whistleblower Act, report a violation of law to an appropriate law
enforcement authority or present sufficient evidence to invoke the limited waiver of
sovereign immunity provided by the Whistleblower Act and his fraud and malice
claims are barred by sovereign immunity. 
          On June 28, 2007, this Court issued an opinion in which we held that the
Whistleblower Act “makes the only jurisdictional prerequisites to maintaining a
whistleblower suit the plaintiff’s status as a public employee and the sufficiency of
his whistleblower allegations” and “whether Okoli actually reported to an appropriate
law enforcement authority, or whether he had a good-faith belief that TDHS was such
an authority, is an element of his whistleblower claim and cannot be a jurisdictional
prerequisite to suit.” Tex. Dep’t of Human Servs. v. Okoli, 263 S.W.3d 275, 282 (Tex.
App.—Houston [1st Dist.] 2007), rev’d, 295 S.W.3d 667 (Tex. 2009). Because we
concluded that TDHS, in its jurisdictional plea, asserted and presented evidence on
only these non-jurisdictional elements of Okoli’s whistleblower claim, we overruled
TDHS’s issues in which it challenged the trial court’s order denying its plea to the
jurisdiction.


 Id.
          The Texas Supreme Court, on August 28, 2009, issued its opinion in State v.
Lueck, in which it held that the elements of a whistleblower claim “can be considered
to determine both jurisdiction and liability.” 290 S.W.3d 876, 883 (Tex. 2009) (citing
Tex. Gov’t Code Ann. § 554.002(a) (Vernon 2004)). On the same day, the supreme
court, in a per curiam opinion, reversed this Court’s opinion in Okoli, explaining that,
under Lueck, whether Okoli made “a good faith report of a violation of law to an
appropriate law enforcement authority is a jurisdictional question.” Tex. Dep’t of
Health and Human Servs. v. Okoli, 295 S.W.3d 667, 668 (Tex. 2009). The supreme
court, “for the reasons explained in Lueck,” remanded the Okoli case to this Court “to
determine whether Okoli has alleged a violation under the Act.” Id. (citing Tex.
Gov’t Code Ann. § 554.002(a) (Vernon 2004)).
          We affirm the order of the trial court.
 
 
Background
          As summarized in our original opinion,


 Okoli, in his petition, alleges that
TDHS hired him as a caseworker trainee and ultimately promoted him to a “Worker
II” position, whose job functions included determining the eligibility of TDHS clients
for its social programs. According to Okoli, Brendell Carroll, his TDHS supervisor,
engaged in fraudulent conduct in processing benefits including, among other things,
“falsifying dates and documents to avoid delinquencies in the handling of clients’
cases.” Okoli first complained about the date-falsification activity to Carroll, who
retaliated against him with certain workplace measures. Okoli then reported the
date-falsification activity to Carroll’s supervisor, John Robinson, and then to
Robinson’s manager, Carol Maxie. Shortly after his report to Maxie, TDHS
terminated Okoli’s employment. Okoli then pursued an administrative grievance
procedure to contest his termination, but the termination decision was sustained.
Okoli further alleges that when he “reported the unlawful practices in the unit” to
Robinson, TDHS terminated his employment, ostensibly “for violating TDHS work
rules.” Okoli asserts a claim against TDHS for violations of the Whistleblower Act
as well as “cause[s] of action” for fraud and malice. 
          In its jurisdictional plea, TDHS argued that the trial court lacked subject-matter
jurisdiction over Okoli’s whistleblower claim because TDHS and “administrators at
[TDHS] were not the proper law enforcement authorities for reports of ‘Unlawful Use
of Funds’” and Okoli did not have a good-faith belief that TDHS and his TDHS
supervisors were such authorities. TDHS also argued that the trial court lacked
subject-matter jurisdiction over Okoli’s claims for fraud and malice because the
Texas Tort Claims Act (“TTCA”) does not waive immunity from suit for intentional
wrongs like these.



          In his response, Okoli asserted that Carroll and other TDHS employees violated
section 12.002 of the Texas Human Resources Code, entitled “Unlawful Use of
Funds.”


 Okoli argued that his report to TDHS was to an appropriate law
enforcement authority because TDHS is the governmental entity authorized to
regulate under and enforce the subject law. Okoli also argued that he, in good faith,
believed that TDHS and his supervisors were authorized to regulate under and
enforce section 12.002 because his work rules required employees to make reports of
fraudulent conduct to their supervisors. He noted that TDHS is authorized to “refer
and fund district attorney’s special welfare fraud units for prosecution.”


 Okoli also
noted that TDHS admitted that “TDHS, through its Office of Investigation (‘OIG’),
investigates the law” that he reported had been violated. 
           The trial court denied TDHS’s jurisdictional plea.
Standard of Review
          We review de novo a trial court’s ruling on a jurisdictional plea. See Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex.
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 
When reviewing a trial court’s ruling on a plea, “we first look to the pleadings to
determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs
and looking to the pleader’s intent,” and “we consider relevant evidence submitted
by the parties when necessary to resolve the jurisdictional issues raised.” City of
Waco v. Kirwan, 298 S.W.3d 618, 621–22 (Tex. 2009); see also Tex. Natural Res.
Conservation Comm’n v. White, 46 S.W.3d 864, 868 (Tex. 2001) (“[W]e consider the
facts alleged by the plaintiff[s] and, to the extent it is relevant to the jurisdictional
issue, the evidence submitted by the parties.”). In considering this evidence, we “take
as true all evidence favorable to the nonmovant” and “indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.” Kirwan, 298 S.W.3d at
622.
          Immunity from suit is properly asserted in a plea to the jurisdiction.


 Lueck,
290 S.W.3d at 880. The State and its agencies like TDHS are immune from suit and
liability in Texas unless the Legislature expressly waives sovereign immunity. Id.;
see also Tex. Gov’t Code Ann. § 311.034 (Vernon Supp. 2009) (“[A] statute shall
not be construed as a waiver of sovereign immunity unless the waiver is effected by
clear and unambiguous language.”). A statute waives immunity from suit, immunity
from liability, or both. Lueck, 290 S.W.3d at 880. Immunity from suit presents “a
jurisdictional question of whether the State has expressly consented to suit,” whereas
immunity from liability concerns “whether the State has accepted liability even after
it has consented to suit.” Id. In statutes in which immunity from suit is waived to the
extent of liability, “immunity from suit and liability are co-extensive.” Id. (citing
Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (Vernon 2005)).
           When a party in a plea to the jurisdiction challenges the pleadings, we
determine if the pleadings contain facts that “affirmatively demonstrate” the trial
court’s jurisdiction to hear the case. Id. at 884. When the facts underlying the merits
and subject-matter jurisdiction are intertwined, “the State may assert immunity from
suit by a plea to the jurisdiction, even when the trial court must consider evidence
‘necessary to resolve the jurisdictional issues raised.’” Id. at 880 (citing Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000)). 
The Whistleblower Act
          In its first two issues, TDHS argues that the trial court erred in denying its plea
to the jurisdiction because Okoli’s “supervisors are not appropriate law enforcement
authorities” and Okoli has “not brought forth sufficient evidence to invoke the limited
waiver of sovereign immunity provided in the Whistleblower Act.”


 TDHS asserts
that it does not regulate or enforce violations of criminal law and Okoli did not have
a good faith belief that TDHS supervisors are appropriate law enforcement
authorities. TDHS further asserts that “[a]lerting an employer to the employer’s own
conduct is insufficient as a matter of law to meet the [Whistleblower] Act’s ‘law
enforcement’ requirement,” and, as a result, Okoli’s “supervisors and other TDHS
administrators, who were allegedly involved in the illegal acts, were not appropriate
law enforcement authorities for purposes of their conduct.” 
 The immunity provision in the Whistleblower Act


 provides:
A public employee who alleges a violation of this chapter may sue the
employing state or local governmental entity for the relief provided by
this chapter. Sovereign immunity is waived and abolished to the extent
of liability for the relief allowed under this chapter for a violation of this
chapter.
 
Tex. Gov’t Code Ann. § 554.0035 (Vernon 2004). Section 554.0035 prescribes two
requirements to waive a governmental entity’s immunity and vest a court with
jurisdiction: (1) the plaintiff must be a public employee and (2) he must allege a
“violation of this chapter.” Lueck, 290 S.W.3d at 881. The standard for a “violation
of this chapter” is found in section 554.002 of the Whistleblower Act. Id. Thus, the
elements of section 554.002 are “necessarily” considered as jurisdictional facts “in
order to ascertain what constitutes a violation, and whether that violation has actually
been alleged.”


 Id. 
          Section 554.002 provides,
(a)     A state or local governmental entity may not suspend or terminate
the employment of, or take other adverse personnel action
against, a public employee who in good faith reports a violation
of law by the employing governmental entity or another public
employee to an appropriate law enforcement authority.
 
(b)     In this section, a report is made to an appropriate law enforcement
authority if the authority is a part of a state or local governmental
entity or of the federal government that the employee in good
faith believes is authorized to:
 
          (1)     regulate under or enforce the law alleged to be
violated in the report; or 
 
          (2)     investigate or prosecute a violation of criminal law. 
 
Tex. Gov’t Code Ann. § 554.002 (Vernon 2004). 
          Under section 554.002(a), “good faith” means “that (1) the employee believed
that the conduct reported was a violation of law and (2) the employee’s belief was
reasonable in light of the employee’s training and experience.” Wichita County v.
Hart, 917 S.W.2d 779, 784 (Tex. 1996). The test’s first element is subjective and
ensures that a Whistleblower claimant believed that he was reporting an actual
violation of the law, while the test’s second element is objective and ensures that the
claimant received the Act’s protection only if a reasonably prudent employee in
similar circumstances would have believed that the facts as reported were a violation
of the law. Id. at 784–85; City of Houston v. Levingston, 221 S.W.3d 204, 218–219
(Tex. App.—Houston [1st Dist.] 2006, no pet.). Similarly, under section 554.002(b),
“good faith” means that (1) the employee subjectively believed the governmental
entity was authorized to regulate under or enforce the law alleged to be violated in the
report, or investigate or prosecute a violation of criminal law; and (2) the employee’s
belief was objectively reasonable in light of the employee’s training and experience. 
Tex. Dep’t of Transp. v. Needham, 82 S.W.3d 314, 320–21 (Tex. 2002); Levingston,
221 S.W.3d at 218. 
          Here, TDHS argues that Okoli’s report to his supervisors did not constitute a 
report of a violation of law to a law enforcement authority because TDHS’s
responsibilities do not include the regulation, enforcement, investigation, or
prosecution of reports of unlawful conduct like that alleged by Okoli; its “general
duties” are limited to administering assistance to those in need of its programs. 
TDHS further argues that an employee with Okoli’s training and experience could not
have a good faith belief that TDHS had the authority to regulate, enforce, or prosecute
a violation of criminal law for “misuse of funds” because he would know that these
powers belong “to any number of prosecutorial agencies such as the Attorney
General’s Office, District Attorney’s Office, the Department of Justice, or at the very
least TDHS’s Office of the Inspector General.” (emphasis added). TDHS concedes
that the OIG at TDHS was “charged with the responsibility to investigate waste,
abuse, and fraud in all health and human services systems.”


 It argues, however, that
because Okoli characterized the reported conduct of his supervisors as “criminal,”
and “criminal violations of the law [that] could result in penitentiary time, [Okoli]
should have . . . reported [the conduct] to the previously mentioned agencies, not
simply to three persons in his chain of command at TDHS.” In support of its
argument that Okoli could not have had a good faith belief that the TDHS
administrators were appropriate law enforcement authorities, TDHS notes that Okoli
previously signed a TDHS memorandum regarding work rule violations that stated
that when such violations also constituted a violation of the penal code,


 “a referral
to OIG [would] be made for possible prosecution.” Citing Needham, TDHS contends
that the Texas Supreme Court has “rejected the notion that a report to one’s superiors
is sufficient” to obtain the protection of the Whistleblower Act. 82 S.W.3d at
320–21.  
          In response, Okoli asserts that TDHS is the governmental entity authorized to
regulate, enforce, investigate, or prosecute “welfare fraud,” and, in determining if he
made a report to an appropriate law enforcement authority, we should focus on the
governmental entity, i.e., TDHS, not the individual supervisors to whom he made his
report. Okoli emphasizes that he reported an unlawful use of funds, which violates 
section 12.002 of the Texas Human Resources Code and which provides,
          (a)     A person charged with the duty or responsibility of administering,
disbursing, auditing, or otherwise handling the grants, funds, or
money provided for in this title commits an offense if the person
misappropriates the grants, funds, or money or by deception or
fraud wrongfully distributes the grants, funds, or money to any
person.
 
          (b)     An offense under this section is a felony punishable by
confinement in the Texas Department of Criminal Justice for a
term of not less than two or more than seven years.
 
Tex. Hum. Res. Code Ann. § 12.002 (Vernon Supp. 2009).
          In affidavits submitted to the trial court, Okoli testified that Carroll, his
supervisor, among other acts, falsified the dates on applications for benefits. Okoli
had previously been instructed that changing file dates on these applications
constituted criminal conduct, he was to report all unlawful acts to his supervisor for
further action, and he was “then [to] go up the chain of command” if he was
dissatisfied with his supervisor’s response. Okoli denied that he had received training
to follow any other whistleblowing procedures. Okoli also noted that he had been
instructed to follow this protocol in prior, unrelated instances of reporting unlawful
conduct or misconduct at TDHS. Okoli, based upon his training, after learning of the
alleged unlawful conduct, first reported the unlawful conduct to Carroll, then to
Robinson, and then to Maxie.


 He explained that, but for the termination of his
employment, he “would have continued” with his reports “up the chain of command.” 
Okoli averred that he reasonably believed that TDHS was authorized to regulate,
enforce, investigate, or prosecute “the culprits” under section 12.002 of the Human
Resources Code. 
          The record before us contains evidence that TDHS, or at least a division of
TDHS, the OIG, is an appropriate law enforcement authority


 that is authorized to
investigate allegations of fraud and “unlawful use of funds” associated with the social
programs administered by employees of TDHS.


 TDHS even concedes this fact in
its briefing when it argues that Okoli would have known “that the power to regulate,
enforce, investigate, and prosecute penal laws” belonged to any number of
prosecutorial agencies and, “at the very least TDHS’s Office of the Inspector
General.”


 (emphasis added). The record before us contains evidence that, in
making his alleged reports of criminal conduct to his immediate supervisor, and the
two higher supervisors in his chain of command, Okoli believed that he was making
reports to persons capable of investigating the alleged criminal conduct. Okoli
testified to these critical facts by affidavit, and, under the applicable standard of
review, we must accept his testimony at this stage as true. See City of El Paso v.
Heinrich, 284 S.W.3d 366, 378 (Tex. 2009) (noting that standard of review applicable
to plea to jurisdiction mirrors standard of review of summary judgments and stating
that court must take as true all evidence favorable to claimant, “indulging every
reasonable inference and resolving any doubts in [his] favor”). The record contains
evidence that Okoli was instructed by TDHS to report the criminal conduct at issue
in this case “up his chain of command,” starting with his immediate supervisor, and,
according to Okoli’s testimony, he followed the required procedures in reporting the
alleged criminal conduct. With Okoli’s pleadings and the evidence as summarized
above in mind, we consider whether the three TDHS supervisors to whom Okoli
made the reports can themselves be considered appropriate law enforcement
authorities under section 554.002 and, alternatively, whether Okoli could have, in
good faith, concluded that these supervisors were appropriate law enforcement
authorities to which to report such conduct. 
          The Texas Supreme Court’s opinion in Leuck provides guidance on this
question. In Leuck, the supreme court held that a Texas Department of Transportation
(“TxDOT”) employee was not entitled to the protection of the Whistleblower Act
because the employee’s report, which was contained in an e-mail to his supervisor,
concerned violations of regulations or internal policy recommendations—not actual
violations of the law and not the kind of reports “that the Whistleblower Act was
designed to protect.” 290 S.W.3d at 885. The court further noted that, even if the
employee had reported a violation of the law, the employee had not made a report to
an appropriate law enforcement authority. Id. at 885–86. An examination of the
pleadings and the attached e-mail revealed that the e-mail demonstrated that the
supervisor, who was the head of a division within TxDOT, was not an appropriate
law enforcement authority because he “could neither regulate nor enforce the law that
[the plaintiff] alleged had been violated.” Id. The e-mail indicated that the plaintiff
employee knew that the supervisor “was not the proper authority within TxDOT to
regulate the reported violations” because the employee recommended in the e-mail
that his supervisor have the report available when discussing the matters “with other
TxDOT divisions.” Id. at 886 (emphasis added). Thus, the e-mail “conclusively
establish[ed]” that the employee “could not have formed a good-faith belief” that his
supervisor “was authorized to enforce such violations.” Id. 
          Under Leuck, as well as precedent from this Court, we should consider not
simply whether TDHS itself could be characterized an appropriate law enforcement
authority, but rather whether the supervisors themselves (to whom the reports were
made) were the appropriate law enforcement authorities to investigate the alleged
criminal matters that were the subject of Okoli’s complaints.


 Id.; see also
Levingston, 221 S.W.3d at 218–219, 224 (noting that division manager of
governmental entity to whom report was made had power to investigate reported
violations of Texas Penal Code as well as legal duty to file charges and provide
evidence; stating that, based upon manager’s “supervisory position,” manager “was
certainly in the best position to receive such reports on behalf” of governmental
entity).  
          Accepting as true Okoli’s testimony that he was required by TDHS policy to
report the subject criminal matters “up the chain of command,”


 we hold that the
supervisors were appropriate law enforcement authorities within TDHS and,
alternatively, that Okoli had a good faith belief that he was reporting the alleged
criminal conduct to appropriate law enforcement authorities. If TDHS compelled
Okoli to bring such criminal matters to the attention of three supervisors within his
chain of command, as testified to by Okoli, and if TDHS policy contemplates referral
of criminal matters to the OIG at TDHS for investigative purposes, which is
undisputed, Okoli, under the plain language of the Whistleblower Act, is entitled to
the Act’s protection for whistleblowing about the alleged unlawful conduct to those
in his chain of command.
          TDHS’s reliance upon Needham is misplaced. In Needham, a plaintiff TxDOT
employee reported to his TxDOT supervisor a co-worker’s suspected driving while
intoxicated incident. 82 S.W.3d at 319. The court noted that “the particular law the
public employee reported violated is critical to the determination” of whether the
governmental entity could be an appropriate law enforcement authority. Id. at 320. 
The court concluded that TxDOT was not an appropriate law enforcement authority
because it had “no authority to regulate under or enforce” the “driving while
intoxicated laws” or “to investigate or prosecute these criminal laws.” Id. The court
noted that, “[a]t most,” TxDOT had authority to “regulate and investigate” employee 
conduct for internal disciplinary reasons, which was not enough to provide the
reporting employee protection under the Whistleblower Act. Id. 
          Here, in stark contrast, Okoli has not made a report of criminal conduct that
was outside the scope of the investigative powers of TDHS. Rather, Okoli alleges
that TDHS employees, in processing benefits administered by TDHS, unlawfully used
funds in violation of section 12.002 of the Texas Human Resources Code. If Okoli,
like the plaintiff in Needham, had alleged that a co-worker had engaged in criminal
conduct unrelated to TDHS’s mission and beyond the investigative powers of TDHS,
Needham would compel the dismissal of his Whistleblower suit. 
          However, Okoli’s claims are more akin to those considered by this Court in
Levingston, 221 S.W.3d 204. In Levingston, we held that the City of Houston’s
Bureau of Animal Regulation and Care (“BARC”) could be considered an appropriate
law enforcement authority for the plaintiff employee’s reports of animal abuse and
violations of the City Code, the Texas Penal Code, and the Texas Health and Safety
Code. Id. at 225. In support of our holding, we cited evidence showing that BARC
had the authority to regulate under or to enforce sections of the Health and Safety
Code and the authority to investigate violations of criminal law under the city code
and penal code.


 Like the employee in Levingston, Okoli has alleged criminal
conduct that his employing governmental entity had the authority to investigate. 
          TDHS’s assertion that an employee is not entitled to the protection of the
Whistleblower Act as a matter of law when the employee alerts his employer to the
employer’s own unlawful conduct lacks any support in the language of section
554.002. The fact that an employee makes a report of a violation of law to his
employer or superior regarding the work being performed by the governmental entity
that employs him does not automatically disqualify that employee from protection
under the Whistleblower Act. Moreover, the fact that the criminal conduct being
reported might also provide a basis for internal employee discipline does not
automatically render the Whistleblower Act inapplicable. See Levingston, 221
S.W.3d at 221 (“Just because many of Levingston’s reports to Nix ‘concerned
employee performance failures’ does not mean that his reports of the above cited
instances did not concern ‘a violation of any law.’”). 
          Finally, TDHS cites Duvall v. Texas Department of Human Services in support
of its argument that TDHS administrators are not appropriate law enforcement
authorities under the Whistleblower Act. 82 S.W.3d 474 (Tex. App.—Austin 2002,
no pet.). In Duvall, the plaintiff TDHS employee reported inaccuracies in statistical
methods used by a division of TDHS to compile “response time reports.” Id. at 476. 
In his original petition, the plaintiff identified the criminal offense of tampering with
a governmental record as the law that he believed TDHS had violated. Id. at 477
(citing Tex. Penal Code Ann. § 37.10 (Vernon Supp. 2009)). In determining
whether the plaintiff had made a report to an appropriate law enforcement authority
under the Whistleblower Act, the court noted that the plaintiff had only presented
evidence that the plaintiff’s supervisor “had the authority to take remedial action with
regard to the alleged inaccuracies in the response time reports.” Id. at 481–82. The
court concluded that because the Whistleblower Act did not refer to the authority to
take “remedial action,” but instead the authority to regulate under or enforce the law
alleged to have been violated or to investigate or prosecute a violation of the criminal
law, the plaintiff’s evidence that he believed that his supervisor had the authority to
take “remedial action” did not satisfy the objective or subjective components of good
faith in section 554.002(b). Id. at 482. 
          In contrast, here, Okoli presented evidence that he had reported unlawful
conduct to the three supervisors in his chain of command because he believed, in
accord with TDHS policy, that he was required to report the unlawful conduct to his
supervisor and then up his chain of command. Okoli believed the conduct of Carroll
and other TDHS employees was criminal, and he believed that TDHS was authorized
to, among other things, investigate the matters. Even TDHS appears to agree that its
OIG had the authority to receive and investigate such complaints of criminal conduct
associated with programs administered by TDHS. Thus, Duvall is not applicable.
          We overrule TDHS’s first two issues.
Fraud and Malice “Claims”
          In its third issue, TDHS argues that the trial court erred in denying its plea to
the jurisdiction on Okoli’s fraud and malice claims because the claims “are barred by
sovereign immunity.” 
          As we stated in our prior opinion, section 41.003 of the Texas Civil Practice
and Remedies Code, which Okoli cites as the basis for his fraud and malice claims,
“does not establish a cause of action.” Okoli, 263 S.W.3d at 282. “Rather, that
section allows for the recovery of exemplary damages upon clear and convincing
evidence of fraud, malice, or gross negligence.” Id. (citing Tex. Civ. Prac. & Rem.
Code Ann. § 41.003(a) (Vernon Supp. 2009)). By his concession in his briefing,
Okoli has “judicially admitted” that his allegations of malice and fraud are merely
allegations on which he might base a request for exemplary damages. Id. (citing
Jansen v. Fitzpatrick, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000,
no pet.)). Because Okoli’s allegations of fraud and malice are merely allegations
supporting damages, they cannot “implicate subject-matter jurisdiction, and a
jurisdictional plea [cannot] be used to attack them.” Id.
          We overrule TDHS’s third issue.
          Conclusion
          We affirm the order of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Alcala, and Hanks.